No. 29,084.

Mae O. Sebaugh, *Appellant*, v. The City of Norcatur, *Appellee*.

(287 Pac. 238.)

Opinion filed May 3, 1930.

*D. H. Postlethwaite,* of St. Francis, *W. S. Langmade* and *Wallace T. Wolfe,* both of Oberlin, for the appellant.

*J. F. Peters,* of Oberlin, *T. D. Relihan* and *A. W. Relihan,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

Harvey, J.: Plaintiff sued to recover damages for the death of her husband alleged to have been caused by the negligence of defendant. The trial court sustained a demurrer to plaintiff's evidence on the ground, primarily, that the death of plaintiff's husband resulted from his own negligence. Plaintiff has appealed.

The pertinent facts disclosed by the record may be stated as follows: The city of Norcatur owns and operates an electric transmission line from Oberlin, where the electricity is generated, to Norcatur. The city of Dresden has a similar line from Oberlin to Dresden, which was built several years after the Norcatur line was constructed. Each of these lines ordinarily carries about 13,200 volts of electric current. At one place where a turn was made in the Dresden line it was so constructed that the wire strung on it nearest to the Norcatur line was thirty-one inches from the nearest wire on the Norcatur line. From this point the lines diverge. The city of Norcatur had an engineer, C. W. Craig, whose duties included that of looking after the city's electric line and equipment, including this transmission line, and keeping the same in repair, and for that purpose had authority to employ such help as was needed, who worked under his supervision and instruction. Plaintiff and her husband, Louis Sebaugh, lived at Norcatur. Louis Sebaugh

was forty-seven years of age. He was an intelligent man, perhaps more than ordinarily so. He had worked at farming, but for several years had been employed in various capacities in and about Norcatur, and for about five years before his death, although not an electrician, he had been employed irregularly, as his services were needed, by Craig to repair, or do other work, on the city's electrical line. On the day in question Craig, with Louis Sebaugh and two other men, was repairing the transmission line. The particular work that was being done on this occasion was repairing the wires where they had become worn near the insulators. This required taking the wires down from the poles and doing the repair work on the ground. The part Louis Sebaugh had in the work was repairing the wires on the ground after they had been taken down. Before beginning the work in the morning of that day Craig, accompanied by Louis Sebaugh, went to the electric plant at Oberlin, where Craig told the man there in charge that he wanted to work on this transmission line and it would be necessary to cut off the electric current. This was done in the hearing and presence of Louis Sebaugh. Craig and Sebaugh then drove southeast from Oberlin, and on the Norcatur line where it was nearest to the Dresden line Craig put on a ground wire. This was done by his climbing a pole on the Norcatur line and taking a copper wire and running it over the three wires on the Norcatur line and fastening it together below those wires and then extending the copper wire into the ground. The purpose of this was, if by any mishap the current of the Oberlin plant should be turned on to the Norcatur line, this copper wire would ground it. The work to be done on the Norcatur line was south of this point. Craig and his men worked on repairing the line until almost noon and were gathering up their tools to go to lunch. Craig had stopped his car in the morning at a point on the highway about 300 feet south of the place he had put the ground wire on the Norcatur line. He and some of the other workmen got in his car and he started to turn it around to go by this place and take the ground wire off, when he saw Louis Sebaugh, who had climbed the pole where the ground wire was, about half way up, and saw him untie the loop of the copper wire, letting one end loose, and saw him give the copper wire a jerk. The natural effect of that was to throw it over the wires of the Norcatur line and against the wires of the Dresden line. Current from the wires on the Dresden line evidently passed along the copper wire to Sebaugh with such force as to cause his death. Louis Sebaugh had

not been instructed by Craig, or anyone else, to take down this ground wire, and in his previous work on the line he had not put up nor taken down such a wire.

In support of the judgment of the court below it is argued that the city of Norcatur was not negligent in any respect which contributed to the death of Louis Sebaugh. But, since the court did not base its ruling on that ground, and the determination of the question is not necessary for the decision of the case, we shall pass that point without determining it. We also pass the question whether or not Louis Sebaugh assumed the risk, for it is clear from the evidence that his death resulted from his own negligence. He knew the Dresden line was there, for it was plainly visible, and he and Craig had talked about it that morning, and he was bound to know that to loosen this grounded wire and jerk it would, in all probability, throw the end of it against or across the wires of the Dresden line. The safe way to take down the ground wire was to untie it, climb to the top of the pole on the Norcatur line, and so handle the ground wire that it would not come in touch with the wire on the Dresden line. But Sebaugh did not do that. There is some evidence that he was in a hurry because of threshing he planned to do that afternoon, but whatever the reason was it is clear that his own careless method in releasing and taking down this ground wire was the sole cause of his death. It requires no citation of authorities to establish the fact that under those circumstances plaintiff could not recover.

The judgment of the trial court in sustaining the demurrer to the evidence is affirmed.